UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DWANE B. LEWIS,

                      Plaintiff,

      -vs-                      **No. 1:14-CV-00794 (MAT)**
                                                **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                      Defendant.

---

## I. Introduction

Represented by counsel, Dwane B. Lewis ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

Plaintiff (d/o/b July 8, 1960), a veteran, applied for DIB in October 2011, alleging disability beginning February 1, 2008. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Grenville Harrop, Jr.

("the ALJ") on March 5, 2013. The ALJ issued an unfavorable decision on March 27, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ found that plaintiff had not engaged in substantial gainful activity during the time period from his alleged onset date of February 1, 2008 through his date last insured of June 30, 2012. At step two, the ALJ found that plaintiff suffered from history of aortic dissection, type B, and post-traumatic stress disorder ("PTSD"), both of which he considered severe. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could frequently but not continuously interact with coworkers and supervisors, and should not interact with large groups of people or drive as a function of his job duties. At step four, the ALJ found that plaintiff was unable to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform. Accordingly, the ALJ found plaintiff not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Dr. Reynolds' Opinion Regarding Mental Health Limitations**

Plaintiff contends that the ALJ erroneously failed to consider a January 4, 2013 PTSD disability benefits questionnaire completed by Dr. William Reynolds, a VA psychologist. In this questionnaire, Dr. Reynolds opined that plaintiff suffered from various work-related limitations stemming from his mental health diagnoses of PTSD and depressive disorder. Dr. Reynolds' opinion indicates that he reviewed plaintiff's medical records, including records of treatment with VA psychologist Dr. Stephen Skiffington, who had terminated plaintiff's treatment, due to missed appointments, in October 2012. Plaintiff reported that he saw Dr. Mohammed Saeed "sporadically for medication therapy and last saw him on November 21, 2012." T. 924.

Dr. Reynolds opined that plaintiff's mental diagnoses caused "[o]ccupational and social impairment with deficiencies in most

3

areas, such as work, school, family relations, judgment, [and] thinking and/or mood." T. 923. Dr. Reynolds stated that plaintiff's PTSD caused a "serious impairment in social and occupational functioning"; depression caused "moderate to serious difficulty in social and occupational functioning"; and alcohol abuse (in remission) caused "some difficulty in social and occupational functioning." Id. Plaintiff's "PTSD symptoms . . . cause[d] clinically significant distress or impairment in social, occupational, or other important areas of functioning." T. 925. According to Dr. Reynolds, plaintiff's PTSD resulted in a number of difficulties, including "[d]ifficulty in establishing and maintaining effective work and social relationships," and "[d]ifficulty in adapting to stressful circumstances, including work or a worklike setting." T. 927.

The regulations provide that the SSA "will evaluate every medical opinion [it] receive[s]," "[r]egardless of its source." 20 C.F.R. § 404.1527(c). In this case, the ALJ failed to even discuss Dr. Reynolds' opinion; moreover, the ALJ failed to weigh other psychological opinion evidence in the record, including opinions from consulting examining psychologists Drs. Sandra Jensen and Carol Descutner.[1] The ALJ erred in failing to weigh these opinions

---

[1] Dr. Jensen opined on November 7, 2009 that "[i]t [did] not appear that [plaintiff's] PTSD would render him unable to be gainfully employed." T. 170. On February 22, 2011, Dr. Descutner opined that plaintiff had a GAF score of 48, which she stated was consistent with an "inability to work," and additionally opined that plaintiff had reduced reliability and productivity due to PTSD. T. 162-63; see generally American Psychiatric Association, *Diagnostic and*

4

and, as plaintiff argues, in failing to even discuss Dr. Reynolds' opinion. See 20 C.F.R. § 404.1527(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge *must explain in the decision the weight given* to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for *any* opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.") (emphasis added). Moreover, this error was not harmless, because the limitations opined in Dr. Reynolds' opinion were quite restrictive and could have resulted in a finding of disability – or at the very least a more restrictive RFC finding – if given weight by the ALJ. Cf. Brooks v. Comm'r of Soc. Sec., 2017 WL 1655211, *3 (N.D.N.Y. May 1, 2017) ("[T]he ALJ did not err in failing to discuss Dr. Baillargeon's May 2009 opinion because it did not relate to the period at issue and further any error would be harmless because the opinion is consistent with the ALJ's ultimate RFC determination.").

The Commissioner argues that the ALJ did not have an obligation to discuss Dr. Reynolds' January 2013 opinion because it post-dated plaintiff's date last insured ("DLI") of June 30, 2012. However, Dr. Reynolds' examination clearly related to the relevant

---

*Statistical Manual of Mental Disorders* ("DSM–IV"), at 34 (4th ed. rev. 2000).

time period, because Dr. Reynolds' assessment was largely based on a review of plaintiff's medical record of treatment predating the DLI. Thus, although conducted after the relevant time period, Dr. Reynolds' opinion was obviously relevant to plaintiff's condition during the relevant time period. See Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004) (noting that the Second Circuit has "observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date . . .") (quoting Lisa v. Secretary of Dep't of Health and Human Serv., 940 F.2d 40, 44 (2d Cir. 1991) (internal quotation marks omitted)).

Moreover, as plaintiff argues in reply, the Commissioner's argument that the ALJ was justified in not considering the opinion because of its late date amounts to an impermissible post hoc rationalization of the ALJ's decision. See, e.g., Marthe v. Colvin, 2016 WL 3514126, *8 (W.D.N.Y. June 28, 2016) ("[T]his Court is not permitted to accept the Commissioner's post-hoc rationalizations for the ALJ's determination."). This is especially so considering that the ALJ cited to evidence post-dating the relevant time period when discussing plaintiff's mental health conditions. See T. 17.

Accordingly, this case is reversed and remanded for further administrative proceedings. On remand, the ALJ is directed to explicitly consider and weigh all of the medical opinions of record, including the psychological opinions of Dr. Reynolds, Dr.

6

Jensen, and Dr. Descutner, with reference to the factors set forth in 20 C.F.R. § 404.1527.

### B. Step Two Determination

Plaintiff contends that the ALJ failed to properly consider the effects of plaintiff's chronic kidney disease at step two of the sequential analysis. It is well-established that "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1023 (2d Cir. 1995)). An impairment is considered non-severe only "if it does not significantly limit [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

In this case, the ALJ engaged in a relatively brief summary of the entire administrative record, which spanned more than 900 pages, and largely failed to discuss evidence of chronic kidney disease which appeared in the record. See, e.g., T. 226, 229, 343, 355-57, 588-89, 591-93, 800-03, 843-44, 866, 869. Moreover, the ALJ did not explain why he considered plaintiff's chronic kidney disease to be a non-severe impairment. Because it is not clear from the ALJ's decision whether the ALJ did properly consider plaintiff's kidney disease in the balance of the sequential evaluation process, the Court finds that the step two error was not harmless. See, e.g., Hamilton v. Colvin, 8 F. Supp. 3d 232, 242 (N.D.N.Y.2013) (holding that the ALJ's step-two error was not harmless where there was "no indication in the decision that the

ALJ considered the impact of [p]laintiff's [impairment] on his ability to perform work-related functions") On remand, therefore, the ALJ is instructed to specifically evaluate whether plaintiff's chronic kidney disease is a severe impairment within the meaning of the regulations. Regardless of whether that particular impairment is found to be severe or non-severe, however, the ALJ must "consider all of plaintiff's impairments, both severe and non-severe, when reaching an RFC determination." Jackson v. Colvin, 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) (citing 20 C.F.R. § 404.1545(a)(2)).

**V. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 15) is denied and plaintiff's motion (Doc. 7) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    June 23, 2017
            Rochester, New York.